UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

JEROME GRIFFIN,

                                        Plaintiff,

v.                                                              6:01-CV-1924
                                                                (FJS/GHL)

COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.

_____

APPEARANCES:                                         OF COUNSEL:

Jerome Griffin
Plaintiff *Pro Se*

HON. GLENN T. SUDDABY                        WILLIAM H. PEASE, ESQ.
United States Attorney for the                 Assistant United States Attorney
 Northern District of New York
*Counsel for Defendant*
P.O. Box 7198
100 S. Clinton Street
Syracuse, New York 13261-7198

GEORGE H. LOWE, United States Magistrate Judge

## REPORT AND RECOMMENDATION[1]

## I.      BACKGROUND

### A.      Procedural History

Plaintiff filed an application for disability insurance benefits on March 3, 1999.

(Administrative Transcript ("T") at 84-86.)  The application was denied initially and upon

reconsideration.  (T. at 56-59, 61-63.)  Plaintiff requested a hearing before an Administrative

---

[1]  This matter was referred to me for report and recommendation by the Honorable Frederick J. Scullin, Jr., Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and Northern District of New York Local Rule 72.3.

Law Judge ("ALJ") which was held on March 1, 2000.  (T. at 361-390.)  On June 6, 2000, the

ALJ issued a decision finding that Plaintiff was not disabled.  (T. at 11-17.)

Plaintiff appealed to the Appeals Council, and the ALJ's decision became the final

decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on

October 19, 2001.  (T. at 5-6.)  Plaintiff commenced this action on December 17, 2001.  (Dkt.

No. 1.)

> ### B.   Procedural History

After several extensions, an answer was filed by Defendant on June 21, 2002.  (Dkt . No.

11.)  Pursuant to General Order No. 18 of the Northern District of New York, "**[w]ithin forty-**

**five (45) days** from the filing of the answer, plaintiff shall serve and file a brief setting forth all

errors which plaintiff contends entitle plaintiff to relief."  (General Order No. 18 at 1, emphasis

in original.)  No such brief was filed.  On April 22, 2003, more than ten months after the answer

was filed, then Magistrate Judge Gary L. Sharpe ordered Plaintiff to file his brief by May 23,

2003.  (Dkt. No. 13.)  The Court received no response from Plaintiff.  On April 12, 2004, the

undersigned ordered Defendant to file their brief; it was filed on June 3, 2004.  (Dkt. No. 16.)

After service of Defendant's brief, the Order specifically gave Plaintiff forty-five days to file and

serve a brief in support of his position.  (*Id.*)  Again, the Court received no response from

Plaintiff.

## II.   APPLICABLE LAW

> ### A.   Standard for Benefits

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI

disability benefits must establish that he is "unable to engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which can be expected to

result in death or which has lasted or can be expected to last for a continuous period of not less

than twelve months."  42 U.S.C. § 1382c(a)(3)(A) (2004).[2]  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such
> severity that he is not only unable to do his previous work but
> cannot, considering his age, education, and work experience,
> engage in any other kind of substantial gainful work which exists
> in the national economy, regardless of whether such work exists in
> the immediate area in which he lives, or whether a specific job
> vacancy exists for him, or whether he would be hired if he applied
> for work.

42 U.S.C. § 1382c(a)(3)(B) (2004).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. §§ 405(a), 1383(d)(1)),

the Social Security Administration ("SSA") has promulgated regulations establishing a five-step

sequential evaluation process to determine disability.  20 C.F.R. § 404.1520 (2005).  "If at any

step a finding of disability or non-disability can be made, the SSA will not review the claim

further."  *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

> At the first step, the agency will find non-disability unless the
> claimant shows that he is not working at a "substantial gainful
> activity."  [20 C.F.R.] §§ 404.1520(b), 416.920(b).  At step two,
> the SSA will find non-disability unless the claimant shows that he
> has a "severe impairment," defined as "any impairment or
> combination of impairments which significantly limits [the
> claimant's] physical or mental ability to do basic work activities."
> [20 C.F.R.] §§ 404.1520(c), 416.920(c).  At step three, the agency
> determines whether the impairment which enabled the claimant to
> survive step two is on the list of impairments presumed severe
> enough to render one disabled; if so, the claimant qualifies.  [20
> C.F.R. §§] 404.1520(d), 416.920(d).  If the claimant's impairment
> is not on the list, the inquiry proceeds to step four, at which the

---

[2]  As of September 25, 2003, revisions were made to certain sections of the Code of Federal
Regulations; the revisions, however, have no effect on the outcome of this Report and Recommendation.

> SSA assesses whether the claimant can do his previous work;
> unless he shows that he cannot, he is determined not to be
> disabled.[] If the claimant survives the fourth stage, the fifth, and
> final, step requires the SSA to consider so-called "vocational
> factors" (the claimant's age, education, and past work experience),
> and to determine whether the claimant is capable of performing
> other jobs existing in significant numbers in the national
> economy.[] [20 C.F.R.] §§ 404.1520(f), 404.1560(c), 416.920(f),
> 416.9630(c).

*Barnhart v. Thomas*, 540 U.S. at 24-25 (footnotes omitted).

The plaintiff-claimant bears the burden of proof regarding the first four steps. *Serrano v. Barnhart*, Civ. No. 02-6372, 2003 WL 22683342, at *11 (S.D.N.Y. Nov. 14, 2003). If the plaintiff-claimant meets his or her burden of proof on all four steps, the burden then shifts to the defendant-Commissioner to prove that the plaintiff-claimant is capable of performing other jobs which exist in significant numbers in the national economy. *Id.* (citing *Barnhart v. Thomas*, 540 U.S. at 25; other citations omitted).

**B.     Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Brown v. Barnhart*, Civ. No. 02-4523, 2003 WL 1888727, at *4 (S.D.N.Y. Apr. 15, 2003); *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986. In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d

4

Cir. 1984).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision.  42 U.S.C. § 405(g) (2005); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991).  "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted).  It must be "more than a scintilla" of evidence scattered throughout the administrative record.  *Serrano*, 2003 WL 22683342, at *10; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938)).  "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams*, 859 F.2d at 258.  However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision.  *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972); *see also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

## III.   THE PLAINTIFF

Plaintiff was born on August 26, 1955.  (T. at 84.)  He has sixteen years of education and also completed some computer programming training.  (T. at 94.)  Plaintiff has previously worked as a data entry clerk, leasing agent, laundry sorter, postal clerk, and janitor in a garage.  (T. at 94, 103, 111, 372.)  Plaintiff alleges disability due to, *inter alia*, depression, anxiety attacks, lack of concentration, and left shoulder and neck pain.  (T. at 90, 102.)

## IV.   THE ALJ'S DECISION

The ALJ found that: (1) Plaintiff had not engaged in any substantial gainful activity (T. at 16); (2) Plaintiff's major depression and drug and alcohol addiction were severe, but that his impairments did not meet or medically equal a listed impairment (T. at 14, 16); (3) Plaintiff retained the residual functional capacity to perform a full range of light and sedentary work (T. at 16); and (4) Plaintiff could perform his past relevant work and thus was not disabled.  (T. at 17.)

## V.   DISCUSSION

### A.   Plaintiff's Failure to File Papers in Response to Defendant's Motion for Judgment on the Pleadings

It is well settled that a plaintiff bears the burden of establishing disability.  *See Melville v. Apfel*, 198 F.3d 45, 51 (2d Cir. 1999) ("The claimant generally bears the burden of proving that she is disabled under the statute.").  *See also Carroll v. Secretary of Health and Human Servs.*, 705 F.2d 638, 642 (2d Cir.1983) ("The burden is on the claimant to prove that he is disabled within the meaning of the Act.").  Plaintiff's *pro se* complaint consists of a fill-in-the-blank form, in which he complains "of a decision which adversely affects the plaintiff in whole or in part." (Dkt. No. 1).  Despite then Magistrate Judge Sharpe's April 22, 2003 Order (Dkt. No. 13) and the undersigned's April 12, 2004 Order (Dkt. No. 15), Plaintiff did not file any papers opposing Defendant's motion, nor has he filed any extension request to enlarge the time within which to oppose Defendant's motion.  As a result, it follows that Plaintiff has failed to set forth all errors which he contends entitle him to relief.  (General Order No. 18 at 1.[3])  Thus Plaintiff's complaint,

---

[3]   General Order No. 18 also contains the following "Notification of the Consequences of Failing to File a Brief as Required by Paragraph (1)(a-d)":  "Plaintiff's brief is the only opportunity for Plaintiff to set forth the errors Plaintiff contends were made by the Commissioner of Social Security that entitle Plaintiff to relief.  The failure to file a brief as required by this Order will result in the consideration of

with nothing else, is conclusory and insufficient to defeat Defendant's motion for judgment on the pleadings. *Feliciano v. Barnhart*, Civ. No. 04-9554, 2005 WL 1693835, at *10 (S.D.N.Y. July 21, 2005); *Reyes v. Barnhart*, Civ. No. 01-4059, 2004 WL 439495, at *3 (S.D.N.Y. Mar. 9, 2004); and *Worthy v. Barnhart*, Civ. No. 01-7907, 2002 WL 31873463, at *1 (S.D.N.Y. Dec. 23, 2002).

**B.     Whether the ALJ's Decision Was Supported By Substantial Evidence**

For the reasons set forth above in Section V.A., it is not necessary for the Court to consider the ALJ's five step sequential evaluation of Plaintiff's claims.  However, as set forth below, such consideration shows that the ALJ's decision is supported by substantial evidence.[4]

1.     <u>Plaintiff Was Not Engaged in Substantial Gainful Activity</u>

The first step of the evaluation is to determine whether Plaintiff was engaged in substantial gainful activity.  20 C.F.R. § 1520(a)(4)(i) (2005).  Substantial gainful activity is defined as work that "involves doing significant and productive physical or mental duties" and "[i]s done (or intended) for pay or profit. 20 C.F.R. §§ 404.1510, 404.1572 (2005).  The ALJ cited the fact that Plaintiff had been employed at several jobs after his alleged onset date, however these jobs lasted less than three months and were unsuccessful work attempts.  (T. at 13.)  Thus the ALJ found that Plaintiff had not engaged in substantial gainful activity since July

---

this appeal without the benefit of Plaintiff's arguments and may result in a decision heavily influenced by the Commissioner's version of the facts and subsequent dismissal of your appeal." (General Order No. 18 at 4.)

[4]  *See Feliciano*, 2005 WL 1693835 (where magistrate judge nonetheless analyzed the five step sequential evaluation even though *pro se* plaintiff never filed a brief); *Jiang v. Barnhart*, Civ. No. 03-0077, 2003 WL 21526937 (S.D.N.Y. July 8, 2003); and *Reynoso v. Apfel*, Civ. No. 97-2234, 1998 WL 61002 (S.D.N.Y. Feb. 11, 1998).

22, 1992, his alleged onset date.  (T. at 16, 84.)  Defendant does not dispute this finding.  (Dkt. No. 16.)

2.  <u>Plaintiff Had Severe Impairments</u>

At the second step of the evaluation, the medical severity of a claimant's impairments is considered.  20 C.F.R. § 1520(a)(4)(ii) (2005).  Based upon the medical evidence, the ALJ concluded that Plaintiff had major depression and drug and alcohol addition, which were severe impairments.  (T. at 14, 16.)  Defendant also does not dispute this finding.  (Dkt. No. 16.)

The ALJ did not find that Plaintiff's left shoulder and neck pain were severe impairments.  This is supported by substantial evidence.  Plaintiff was treated by Daniel Elstein, M.D. for his shoulder and neck pain.  (T. at 171-174.)  In a letter to ALJ Joachim J. Volhard, dated September 20, 1994, Dr. Elstein noted that while Plaintiff complained of radicular pain in his left upper extremity at a July 14, 1994 appointment, the MRI did not confirm any evidence of any recurrent cervical disc problems.  (T. at 172.)  Plaintiff's cervical spine fusion procedure[5] was "solid" as evidenced by the films.  (*Id.*)  Dr. Elstein opined that Plaintiff was capable of full time sedentary work, but should avoid lifting more than twenty pounds.  (*Id.*)  On April 5, 1995, Plaintiff complained to Dr. Elstein of aching in his left shoulder upon movement.  (T. at 174.)  Dr. Elstein noted that Plaintiff had good range of motion in his shoulder and his cervical spine.  (*Id.*)  There was some evidence of a left chronic cervical neck sprain and Plaintiff was prescribed some medication.  (*Id.*)

At his March 1, 2000 hearing, Plaintiff testified as follows:

_____

[5]  At his hearing, Plaintiff testified that he had surgery on his neck, which was performed by Dr. Elstein, in January of 1993.  (T. at 380.)

8

| | |
|---|---|
| ALJ: | All right.  Now what about are there any other medical – physically how are you?  Okay or not? |
| Plaintiff: | Physically I'm fine as far as I know. |

[Testimony omitted.]

| | |
|---|---|
| ALJ: | Right.  But, in any event, the main problem seems to be mental then? |
| Plaintiff: | Yes, mental, emotional. |

(T. at 379, 380.)  Furthermore, regarding the pain in his neck,

| | |
|---|---|
| ALJ: | Yeah.  All right.  How's that.  You say – and I asked you physically.  Are – you say physically I'm fine. Is that okay or not? |
| Plaintiff: | Well, they tell me my arthritis in my neck and stuff was normal.  That's why I say I'm fine.  When it rains or gets cold, it gets, you know, it gets painful. Sometimes when I get up from laying down it hurts and it gets stiff and crampy. |
| ALJ: | Well, it's not the constant pain? |
| Plaintiff: | No.  It don't be constant, no, not constant, no. That's why I say I'm okay because everybody tells me it's normal. |
| ALJ: | Well, if you're having pain every day, are you taking medication for it? |
| Plaintiff: | For my neck no. |
| ALJ: | All right.  But if you was having pain every day and you could have – you know, you – yes, and then it's a question of whether or not you need to go back and see somebody for your neck. Is anybody treating your neck now? |
| Plaintiff: | No. |

(T. at 381.)

A "severe impairment" is defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 404.1521 (2005).  "Basic work activities" are defined as "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. § 404.1521(b) (2005).  This includes

walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, speaking, understanding, carrying out, remembering simple instructions, use of judgment, responding appropriately to supervision, co-workers and usual work situations, and dealing with changes in a routine work setting.  20 C.F.R. § 404.1521(b) (2005).  *See also Ianni v. Barnhart*, Civ. No. 02-74A, 2005 WL 3220220, *11 (W.D.N.Y. Nov. 18, 2005) and *Camacho v. Apfel*, Civ. No. 97-6151, 1998 WL 813409, at *6 (E.D.N.Y. July 22, 1998).  Based upon the medical evidence and Plaintiff's testimony at his hearing, Plaintiff's left shoulder and neck pain are not severe impairments.  Notably, Dr. Elstein opined that Plaintiff could perform full time sedentary work, but should avoid lifting more than twenty pounds.  Furthermore, Plaintiff himself stated that he was physically fine, that the pain was not constant, and that he took no medication, nor was anyone treating him for his neck and shoulder condition.  Accordingly, there is substantial evidence to support the ALJ's finding that Plaintiff's only severe impairments were his depression and drug and alcohol addiction.

> 3.  Plaintiff's Impairments Did Not Meet or Equaled a Listed Impairment

At step three, the inquiry is whether a claimant's impairment(s) meets or equals[6] a listing, as set forth in Appendix 1 to Subpart P of Part 404 (a "listed impairment").  20 C.F.R. § 1520(a)(4)(iii) (2005).  The ALJ found that Plaintiff's major depression and drug and alcohol addiction did not meet or medically equal a listed impairment.  (T. at 14, 16.)  There is substantial evidence to support the ALJ's finding.

---

[6]  An impairment(s) is medically equivalent to a listed impairment "if the medical findings are at least equal in severity and duration to the listed findings.  We will compare the symptoms, signs, and laboratory findings about your impairment(s) . . . with the medical criteria shown with the listed impairment."  20 C.F.R. § 404.1526(a) (2005).

Plaintiff alleges disability due to, *inter alia*, depression, anxiety attacks, and lack of concentration; furthermore, the ALJ found that Plaintiff's drug and alcohol addiction was also a severe impairment.  (T. at 14, 90, 102.)  Plaintiff's alleged impairments most closely correspond to Listing 12.04 (Affective Disorders), Listing 12.06 (Anxiety Related Disorders), and Listing 12.09 (Substance Addicting Disorders).  The medical evidence does not show that Plaintiff's symptoms meet or equal the requirements for any of the Listings.

### a.    Listing 12.04

For example, Listing 12.04 states that "[t]he required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied":

A.    Medically documented persistence, either continuous or intermittent, of one of the following:
    1.    Depressive syndrome characterized by at least four of the following:
        a.    Anhedonia or pervasive loss of interest in almost all activities; or
        b.    Appetite disturbance with change in weight; or
        c.    Sleep disturbance; or
        d.    Psychomotor agitation or retardation; or
        e.    Decreased energy; or
        f.    Feelings of guilt or worthlessness; or
        g.    Difficulty concentrating or thinking; or
        h.    Thoughts of suicide; or
        i.    Hallucinations, delusions, or paranoid thinking; or
    2.    Manic syndrome characterized by at least three of the following:
        a.    Hyperactivity; or
        b.    Pressure of speech; or
        c.    Flight of ideas; or
        d.    Inflated self-esteem; or
        e.    Decreased need for sleep; or
        f.    Easy distractability; or
        g.    Involvement in activities that have a high probability of painful consequences which are not recognized; or

11

        h.     hallucinations, delusions, or paranoid thinking;

or

3.    Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes);

AND

B.    Resulting in at least two of the following:

    1.    Marked restriction of activities of daily living; or

    2.    Marked difficulties in maintaining social functioning; or

    3.    Marked difficulties in maintaining concentration, persistence, or pace; or

    4.    Repeated episodes of decompensation, each of extended duration;

OR

C.    Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

    1.    Repeated episodes of decompensation, each of extended duration; or

    2.    A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

    3.    Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04 (2005).

The medical evidence does not provide support that Plaintiff's depression met or equaled Listing 12.04. At an April 14, 1999 psychiatric examination, Kristen Barry, Ph.D., found that Plaintiff had no apparent significant psychiatric or physical limitations, and that his allegations were not consistent with his examination results. (T. at 275.) In addition, C. Richard Nobel, Psy.D., a non-examining physician, completed a mental residual functional capacity assessment ("RFC Assessment") on June 8, 1999. (T. at 288-290.) Relying upon Dr. Barry's psychiatric examination, he found that Plaintiff had no areas which were significantly limited. (*Id.*) On

August 11, 1999, Ivan Fras, M.D., another non-examining physician, completed a mental RFC Assessment and opined that Plaintiff was not significantly limited in every area except one; Plaintiff was "moderately limited" in the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances.  (T. at 300.)  In a February 8, 2000 psychiatric consultation, Anthony Vinciquerra, M.D., found that Plaintiff's depression was not in full remission, but was improved from several months prior thereto.  (T. at 357.)  He also noted that Plaintiff was pleasant, cooperative, in no acute distress, had appropriate affect, and even mood.  (T. at 356.)  Plaintiff's attention span, concentration, memory, and orientation were within normal limits.  (T. at 357.)

The Court notes that on February 22, 2000, Jeffrey Jones, RPA-C, opined that Plaintiff could not participate in any employment activities due to his depression, dysthymic[7] disorder, and polysubstance abuse.  (T. at 307-308.)  On May 10, 2000, David McCall, M.D., also opined that Plaintiff could not participate in any employment activities for the same reasons.  (T. at 360.)  The Court notes that Mr. Jones is not a physician, rather he is a physician's assistant, and thus his opinions are not entitled to treating physician weight.  20 C.F.R. §§ 404.1513, 404.1527 (2005).  In addition, the May 10, 2000 report is the only medical evidence contained in the record which was signed by Dr. McCall.  Although his name appears on other reports, they were signed by Mr. Jones, on behalf of Dr. McCall.  (*See*, *e.g.*, T. at 347, 348-351, 352, 353-355.)  It is unclear on the occasions that Mr. Jones signed on Dr. McCall's behalf whether Dr. McCall or Mr. Jones actually examined Plaintiff.

---

[7] Dysthymic is defined as depression.  *Dorland's Illustrated Medical Dictionary* 579 (30th ed. 2003).

13

Accordingly, the above medical evidence does not provide support that Plaintiff's impairments met or equaled Listing 12.04.

### b.    Listing 12.06

Listing 12.06 states that "[t]he required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in both A and C are satisfied.

A.    Medically documented findings of at least one of the following:
    1.    Generalized persistent anxiety accompanied by three out of four of the following signs or symptoms:
        a.    Motor tension; or
        b.    Autonomic hyperactivity; or
        c.    Apprehensive expectation; or
        d.    Vigilance and scanning
    or
    2.    A persistent irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity, or situation; or
    3.    Recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week; or
    4.    Recurrent obsessions or compulsions which are a source of marked distress; or
    5.    Recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress;
AND
B.    Resulting in at least two of the following:
    1.    Marked restriction of activities of daily living; or
    2.    Marked difficulties in maintaining social functioning; or
    3.    Marked difficulties in maintaining concentration, persistence, or pace; or
    4.    Repeated episodes of decompensation, each of extended duration.
OR
C.    Resulting in complete inability to function independently outside the area of one's home.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.06 (2005).

14

The medical evidence does not support that Plaintiff's alleged anxiety disorder meets or equals the requirements of this listed impairment.  On April 14, 1999, Dr. Barry conducted a psychiatric examination of Plaintiff and found that he had an antisocial personality disorder and that his prognosis was guarded given this and his ongoing substance abuse.  (T. at 276.)  However, she found that Plaintiff had no apparent significant psychiatric limitations.  (T. at 275.)  Furthermore, in a June 8, 1999 Psychiatric Review Technique, Dr. Nobel also found that Plaintiff had an antisocial personality disorder, but that he had no degree of limitation regarding activities of daily living; maintaining social functioning; deficiencies of concentration, persistence, or pace resulting in failure to complete tasks in a timely manner; and never had episodes of deterioration or decompensation in a work or work-like setting which caused an individual to withdraw from a situation or experience exacerbation of signs of symptoms.  (T. at 286.)

On August 11, 1999, Dr. Fras opined that Plaintiff had no degree of limitation regarding activities of daily living; maintaining social functioning; and seldom had deficiencies of concentration, persistence, or pace resulting in failure to complete tasks in a timely manner.  (T. at 298.)  He stated that he had insufficient evidence to determine whether Plaintiff had episodes of deterioration or decompensation in a work or work-like setting which caused an individual to withdraw from a situation or experience exacerbation of signs of symptoms.  (*Id.*)  In a mental RFC Assessment completed on the same date, Dr. Fras stated that Plaintiff was not significantly limited in every area except one; Plaintiff was moderately limited in his ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances.  (T. at 300-302.)  On February 8, 2000, Dr. Vinciquerra found that Plaintiff's panic disorder with agoraphobia was in remission.  (T. at 357.)

15

As stated above, Plaintiff must satisfy the requirements of parts A and B of Listing 12.06 or part C. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.06. The medical evidence discussed above does not show that Plaintiff meets part B, thus in order to satisfy Listing 12.06, he must meet part C. There is no evidence that Plaintiff is completely unable to function independently outside his home. He testified that he takes care of his sons on the weekends (T. at 369), was employed from May through August of 1998[8] (T. at 372), goes to the park a lot (T. at 386), and attends AA meetings three to four times a week (T. at 387.)

Accordingly, the above evidence does not provide support that Plaintiff's impairments met or equaled Listing 12.06.

### c.     Listing 12.09

The required level of severity for this listing is met when the requirements of, *inter alia*, Listing 12.04 or Listing 12.06 are met. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.09 (2005). As discussed above, Plaintiff does not meet the requirements for Listing 12.04 or 12.06, thus he does not meet the requirements for this Listing and the ALJ's finding is supported by substantial evidence.

4.     <u>Plaintiff Retained the Residual Functional Capacity to Perform Light and Sedentary Work and Thus Could Perform His Past Relevant Work</u>

At the fourth step, a claimant's residual functional capacity ("RFC") and past relevant work are considered. 20 C.F.R. § 1520(a)(4)(iv) (2005). The ALJ found that Plaintiff had the

---

[8]  It is notable that Plaintiff left the job, not because of any of his alleged impairments, but because "there was no room to grow." (T. at 373.)

RFC to perform the full range of light[9] and sedentary[10] work, which did not preclude performance of his past relevant work, which included data entry on a computer and janitorial work.  (T. at 16.)  Because Plaintiff could perform his past relevant work, the ALJ found that Plaintiff was not disabled.  (T. at 17.)  Defendant argues that the ALJ's findings are supported by substantial evidence.  (Dkt. No. 16 at 15-21.)  The Court agrees with Defendant.

On September 20, 1994, Plaintiff's treating physician, Dr. Elstein, opined that Plaintiff was "capable of full time sedentary work[, but] [h]e should avoid lifting more than 20 pounds." (T. at 172.) Mr. Jones (for Dr. McCall) completed a Physical RFC Assessment on April 19, 2000. (T. at 348-351.)  Mr. Jones and Dr. McCall specifically stated that their "knowledge of this ability or impairment is limited to a very brief discussion at the 10/12/99 office visit."  (T. at 348.)  Furthermore, they also stated that their findings were based upon "history" and that they had limited information to support their findings.  (T. at 350.)  Under the circumstances, and since it is unclear whether these opinions are those of Mr. Jones (a physician's assistant, who is not entitled to treating physician weight) or Dr. McCall (as the assessment was signed by "Jeffrey S. Jones RPAC, for David McCall, M.D.,") the Court will not rely upon this Physical RFC Assessment.

---

[9]  "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighting up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." 20 C.F.R. § 404.1567(b) (2005).

[10]  "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a) (2005).

Notably, Plaintiff testified that he could lift ten to fifteen pounds, although only for short periods of time and not on a repetitive basis.  (T. at 385.)  He also testified that his previous job as a janitor required him to lift a mop, paint cans, and a broom.  (*Id.*)  Plaintiff also stated that he could walk, bend, sit, stand, and use his hands.  (T. at 384.)  Furthermore, Plaintiff testified that he was physically fine and was not being treated for his neck pain.  (T. at 379-381.)

Plaintiff stated that his data entry job did not require him to walk, stand, climb, kneel, or crawl.  (T. at 125, 126.)  This position did require him to sit, stoop, and crouch for four hours a day, and write, type, or handle small objects for three and a half hours a day.  (T. at 126.)  The most Plaintiff had to lift was "twelve pages of paper."  (*Id.*)  Plaintiff's job as a janitor required him to walk; climb; and write, type, or handle small objects for three hours a day; stand for one hour per day; and handle, grab, or grasp big objects for five hours.  (T. at 125, 131.)  These big objects included brooms, mops, bags of salt, garbage bags, and paint cans.  (T. at 131.)  The heaviest weight he lifted was twenty pounds and he frequently lifted ten pounds.  (*Id.*)

According to Plaintiff's own description, and pursuant to Dr. Elstein's opinion, Plaintiff could perform light and sedentary work.  Furthermore, Plaintiff's non-exertional impairments, *e.g.*, his depression and alcohol and drug addiction, did not have any significant impact on his ability to work.  Notably, Dr. Vincinquerra stated, on February 8, 2000, that Plaintiff's polysubstance dependence and panic disorder with agoraphobia were in remission, and that his dysthymic disorder was in partial remission.  (T. at 357.)  Additionally, the non-examining physicians found that Plaintiff generally had no areas which were significantly limited.  (T. at 288-290, 300-302.)  Plaintiff testified that his drug and alcohol addiction had been in remission for eight months.  (T. at 383-384.)

18

There is substantial evidence to support the ALJ's finding that Plaintiff could perform past relevant work as, *inter alia*, a data entry clerk and a janitor.

### C.  Whether the ALJ Properly Found That Plaintiff's Allegations Were Not Totally Credible

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'"  *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (quoting *Gallardo v. Apfel*, Civ. No. 96-9435, 1999 WL 185253, at *5 (S.D.N.Y. Mar. 25, 1999)).  To satisfy the substantial evidence rule, the ALJ's credibility assessment must be based on a two-step analysis of pertinent evidence in the record.  20 C.F.R. § 404.1529 (2005); *see also Foster v. Callahan*, Civ. No. 96-1858, 1998 WL 106231, at *5 (N.D.N.Y. Mar. 3, 1998).  First, the ALJ must determine, based upon the claimant's objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged . . . ."  20 C.F.R. § 404.1529(a) (2005).  Second, if the medical evidence alone establishes the existence of such impairments, then the ALJ need only evaluate the intensity, persistence, and limiting effects of a claimant's symptoms to determine the extent to which they limit the claimant's capacity to work.  20 C.F.R. § 404.1529(c) (2005).

When the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of

claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.  20 C.F.R. § 404.1529(c)(3) (2005).  An ALJ's evaluation of a plaintiff's credibility is entitled to great deference if it is supported by substantial evidence.  *Murphy v. Barnhart*, Civ. No. 00-9621, 2003 U.S. Dist. LEXIS 6988, at *29-*30 (S.D.N.Y. Jan. 21, 2003) (citing *Bischof v. Apfel*, 65 F. Supp. 2d 140, 147 (E.D.N.Y. 1999) and *Bomeisl v. Apfel*, Civ. No. 96-9718, 1998 U.S. Dist. LEXIS 11595, at *19 (S.D.N.Y. July 30, 1998) ("Furthermore, the ALJ has discretion to evaluate a claimant's credibility . . . and such findings are entitled to deference because the ALJ had the opportunity to observe the claimant's testimony and demeanor at the hearing.")).

The ALJ found that Plaintiff's allegations regarding his limitations were not totally credible.  (T. at 16.)  There is substantial evidence to support the ALJ's finding.  First, the Court notes that the ALJ was clearly aware of the standard under 20 C.F.R. § 404.1529, as he summarized it in his decision.  (T. at 14.)  The ALJ also discussed the medical evidence, as well as Plaintiff's testimony regarding his pain, symptoms, and activities.  (T. at 14-15.)

Plaintiff testified that he was physically fine (T. at 379), that the pain in his neck was not constant (T. at 381), and that the main problem seemed to be mental or emotional.  (T. at 380.)  Thus, Plaintiff's own testimony would belie any argument that the ALJ's finding was not supported by substantial evidence.

Accordingly, the ALJ's finding is supported by substantial evidence.

**WHEREFORE,** it is hereby

20

**RECOMMENDED**, that the decision of the Commissioner be **AFFIRMED** and the complaint (Dkt. No. 1) be **DISMISSED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: March 22, 2006
          Syracuse, New York

George H. Lowe
United States Magistrate Judge

21